2 F.3d 1156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mike ALLEN; Jerry Rohrs; Harvey Wishoff; Reed Ross; et
al., Plaintiffs-Appellants,
v.
LOCAL 313 INTL. BRO.; Super Valu; JOINT COUNCIL OF
TEAMSTERS, Defendants-Appellees.
Mike ALLEN; Jerry Rohrs; Harvey Wishoff; Reed Ross, et
al., Plaintiffs-Appellees,
v.
LOCAL 313 INTL. BRO., Defendant-Appellant.
 Nos. 92-35005, 92-35098.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 3, 1993.
Decided Aug. 13, 1993.
 
 Before WRIGHT, BEEZER and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Thirty-eight truck drivers (Appellants) appeal the district court's dismissal of their action alleging that Local Union 313 of the International Brotherhood of Teamsters (Local 313) violated its duty of fair representation under the Labor Management Relations Act of 1947. Local 313 cross-appeals the district court's denial of its motion for summary judgment, the district court's finding that the Drivers' action was not barred by their failure to exhaust internal union remedies, and the district court's refusal to award attorney's fees to Local 313 pursuant to Fed.R.Civ.P. 11. The district court had jurisdiction under 28 U.S.C. Sec. 1331. This court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 STATEMENT OF THE CASE
 
 3
 The Appellants are all employed as drivers by West Coast Grocery (West Coast) at its Tacoma plant and are members of Local 313. In 1990, Local 313's bargaining representatives, Bill Lueke and J. Michael Cserepes, entered into contract negotiations with West Coast concerning the terms of the Appellants' employment. During the course of negotiations rumors spread that West Coast was planning to transfer drivers from its Auburn, Washington facility to its Tacoma plant. This alarmed the Appellants, who were concerned that their seniority would be adversely affected when the Auburn drivers, represented by Local Union 117 (Local 117), transferred to Local 313. This concern was raised at a bargaining unit meeting of Local 313 held by Cserepes and Lueke on May 5, 1990. At this meeting, Local 313's membership voted by a margin of thirty-four to three that the Auburn drivers should be placed at the bottom of the Tacoma seniority list ("endtailed") rather than integrated by relative seniority ("dovetailed").
 
 
 4
 Lueke informed West Coast negotiator Pete Clarke that the membership wanted the Auburn drivers to be endtailed. Clarke confirmed that five or six Auburn drivers would be transferred to Tacoma and informed Lueke that the seniority issue would have to be resolved to the satisfaction of Local 313, Local 117, and West Coast before the contract would be concluded. Consequently, representatives of Local 313 and Local 117 met to discuss the seniority issue toward the end of June, 1990.
 
 
 5
 These negotiations proved unproductive. Local 117 insisted on terms similar to the "Letter of Understanding" incorporated in the 1987 contract between West Coast and Local 313. This letter effectively guaranteed five Auburn drivers work for the life of the contract. This was unacceptable to Local 313. Similarly, Local 313's proposal that the incoming Auburn drivers be endtailed was unacceptable to Local 117. Unable to compromise, the parties agreed to submit the issue to Joint Council 28 for resolution.
 
 
 6
 This agreement was reflected in a revised Letter of Understanding drafted by representatives of West Coast, Local 313, and Local 117. The revised Letter of Understanding was then incorporated into a proposed contract between Local 313 and West Coast. On June 24, 1990, the proposed contract was presented to Local 313's membership for ratification. For approximately four hours the terms of the contract were discussed and debated. A motion to wait seventy-two hours before voting on the proposed contract was rejected. Instead, a majority of Local 313's membership voted to accept the contract, including the revised Letter of Understanding.
 
 
 7
 In accordance with the revised Letter of Understanding, the seniority issue was raised before Joint Council 28 on August 13, 1990. Joint Council 28 considered the competing positions and then determined, as a matter of equity, to permit the Auburn drivers to dovetail into the Tacoma seniority list.
 
 
 8
 Unhappy with this result, members of Local 313 filed suit against Local 313, West Coast and Joint Council 28 on December 3, 1990.[1] They claimed that Local 313 breached its duty of fair representation by allowing the Auburn drivers to dovetail into the Tacoma seniority list against their express disapproval. Union 313 moved for summary judgment on August 1, 1991. The Appellants responded with their own motion for summary judgment on August 18, 1991. Both motions were denied on September 17, 1991.
 
 
 9
 A four day bench trial concluded November 21, 1991. The district court ordered judgment of dismissal in favor of Local 313. However, it rejected Local 313's defense of failure to exhaust internal union remedies and refused Local 313's request for attorney's fees pursuant to Fed.R.Civ.P. 11. The appellants filed their appeal on December 19, 1991. Local 313 cross-appealed on December 31, 1991.
 
 STANDARD OF REVIEW
 
 10
 The Appellants do not indicate what standard this court should utilize in reviewing the district court's decision denying their fair representation claim. Local 313 urges the court to employ a clearly erroneous standard. While this is the applicable standard for reviewing the district court's findings of fact, Anderson v. Bessemer City, 470 U.S. 564, 572 (1985), the claim that Local 313 violated its duty of fair representation is a mixed question of law and fact that is subject to de novo review. Galindo v. Stoody, 793 F.2d 1502, 1513 (9th Cir.1986).
 
 
 11
 Local 313 contends that this court reviews de novo the district court's denial of a request for attorney's fees under Rule 11. Local 313 is mistaken. "Rather, an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).
 
 DISCUSSION
 A. Duty of Fair Representation
 
 12
 The Appellants argue that Local 313 breached its duty of fair representation for three reasons. First, it failed to secure a contract term providing that the Local 117 drivers transferring to Tacoma would be endtailed. Second, it held a flawed ratification proceeding concerning the proposed contract. Third, it erroneously agreed to submit to arbitration before Joint Council 28 and then failed to make an adequate presentation in support of endtailing the Local 117 drivers.
 
 
 13
 The Appellants face a difficult burden in establishing their fair representation claim. The Supreme Court has held that in order to prove that a union breached its duty of fair representation the plaintiff must demonstrate that the union's actions were either arbitrary, discriminatory, or in bad faith. Air Line Pilots Association International v. O'Neill, 111 S.Ct. 1127, 1130 (1991). In reviewing a union's performance, a court must be highly deferential. Id. at 1135. "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents...." Ford Motor Co. v. Huffman et al., 345 U.S. 330, 338 (1953). Mere negligence on the part of the union does not establish a breach of its duty of fair representation. Marino v. Writers Guild of America, East, Inc., 992 F.2d 1480, 1486 (9th Cir.1993).
 
 
 14
 The Ninth Circuit has long recognized that "[u]nions have broad discretion to act in what they perceive to be their members' best interests." Id. Consequently, it has stressed the importance of narrowly construing the unfair representation doctrine. Johnson v. United States Postal Service, 756 F.2d 1461, 1465 (9th Cir.1985). Toward this end, the Ninth Circuit engages in a two-step analysis to determine whether a union has breached its duty of fair representation. "[W]e ask first whether the act in question involved the union's judgment, or whether it was 'procedural or ministerial.' " Moore v. Bechtel Power Corporation, 840 F.2d 634, 636 (9th Cir.1988) (citations omitted). "Second, if the conduct was procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith. However, if the conduct involved the union's judgment, then 'the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith.' " Burkevich v. Air Line Pilots Association, International, 894 F.2d 346, 349 (9th Cir.1990) (citations omitted).
 
 
 15
 The first step of this analysis does not yield clear results in the instant case. The acts which the appellants rely on to establish their fair representation claim have both procedural and discretionary elements. This is not surprising. At least one court has recognized that "... differentiating a ministerial task from a judgment call is not always easily accomplished." Peters v. Burlington Northern Railroad Company, 931 F.2d 534, 539 (9th Cir.1990).[2] This does not affect our decision, however, because none of the Appellants' claims establish that Local 313's conduct was either arbitrary, discriminatory or in bad faith.
 
 1. Contract Negotiations
 
 16
 The Appellants argue that Local 313 negotiated in an arbitrary and irrational fashion. The Appellants' claim is based on three factors. First, they note that West Coast was neutral on the seniority issue. Second, they contend that Local 313 had no duty to represent the interests of Local 117. Finally, they emphasize that the vast majority of Local 313's members opposed dovetailing the Local 117 drivers. Under these circumstances, the Appellants argue that Local 313 simply should have insisted that the Local 117 drivers be endtailed. By entering into negotiations with Local 117, the Appellants contend that Local 313 inexplicably ignored these facts, undermined its own position, and violated its duty of fair representation.
 
 
 17
 The Appellants' argument misrepresents the parties' positions and their relative bargaining power in these negotiations. The district court found that while West Coast was neutral as to whether the Local 117 drivers were dovetailed or endtailed, it was adamant that the issue be resolved. Indeed, the district court inferred that the contract between West Coast and Local 313 would not be completed until this issue was resolved.
 
 
 18
 These findings are not clearly erroneous. Instead, they are supported by both testimony and the circumstances underlying the negotiations. Pete Clarke, West Coast's negotiator, made it clear that West Coast wanted the seniority issued resolved. West Coast had decided to transfer drivers from Auburn to Tacoma and wanted to avoid any problems with Local 117. It is reasonable to assume that West Coast would not sign a contract with Local 313 until the seniority issue was resolved because West Coast realized that after Local 313 secured the contract it would not be flexible on this issue.
 
 
 19
 Thus, contrary to the Appellants' contention, Local 313 was not free to insist that Local 117 drivers be endtailed. Instead, it was forced to negotiate with Local 117 so that it could resolve the seniority issue and finalize the contract with West Coast. The record reveals that Local 313 did all that it could in these negotiations. It advanced the Appellants' position that the Local 117 drivers would have to be endtailed. Local 117, recognizing that a compromise could not be reached without its consent, held fast in its position. Local 117 would not accept endtailing and wanted an arrangement similar to the 1987 Letter of Understanding.
 
 
 20
 Eventually, Local 313 realized that if it wanted the issue resolved in order to enter the contract it had to agree to arbitration before Joint Council 28. The Appellants claim that this decision was both procedurally and strategically flawed. However, unions use arbitral bodies such as joint councils to resolve matters all of the time. See Humphrey v. Moore, 375 U.S. 335 (1964) (issue of whether employees should be endtailed or dovetailed submitted to joint council). Moreover, the Appellants offer no evidence to buttress their claim that Joint Council 28 was biased in favor of Local 117. Thus, far from breaching its duty of fair representation, Local 313 acted reasonably under the circumstances in an attempt to do what was best for its members.
 
 2. Contract Ratification
 
 21
 The Appellants also claim that Local 313 breached its duty of fair representation when it presented the proposed contract to the membership for ratification. According to the Appellants, Local 313 misled the membership into thinking that West Coast wanted the revised Letter of Understanding in the contract by failing to tell them that West Coast was neutral on the issue of seniority. In addition, the Appellants contend that they were unfairly surprised by the presence of the revised Letter of Understanding in the contract and that they were not given sufficient time to consider this provision at the ratification hearing.
 
 
 22
 Local 313 argues that the Appellants' claim fails in light the Ninth Circuit's decision in Ackley v. Western Conference of Teamsters, 958 F.2d 1463 (9th Cir.1992). In Ackley, the court held that in order to establish a breach of the duty of fair representation based on misrepresentations made by union leaders during the ratification process, plaintiffs must demonstrate that "(1) absent the misrepresentations, the outcome of the ratification vote would have been different; and that (2) had it been different, the company would have acceded to the union's demands." Id. at 1472. Strictly speaking, Ackley only involved affirmative misrepresentations made by union leaders. However, there is no reason to believe that this standard should not control in the instant case.[3]
 
 
 23
 Appellants state that Local 313's failure to disclose West Coast's position on the seniority issue "... effected (sic) the disposition of the membership as a whole when it came time to vote." They add that "[t]here is also no way of guessing how different their vote may have been had they been properly informed as to the position of the company on the subject." This is simply insufficient under Ackley. The fact that the nondisclosure may have affected the vote is irrelevant. The Appellants have the burden of affirmatively demonstrating that the vote would have been different had the relevant information been disclosed. The Appellants do not meet this burden, nor do they make any showing that West Coast would have acceded to their demands on the seniority issue.
 
 
 24
 The Appellants' argument that they were unfairly surprised by the revised Letter of Understanding and had insufficient time to consider it also fails under Ackley. The Appellants make no attempt to prove that had this information been disclosed earlier or had they been given more time to consider the issue, the ratification vote would have turned out differently. There is also no evidence to support this notion.
 
 
 25
 Ackley aside, the Appellants' claim fails for more fundamental reasons. First, the contention that West Coast was neutral on the seniority issue, and therefore did not care if the revised Letter of Understanding was in the contract, is simply wrong. Once again, the Appellants mischaracterize West Coast's position on the seniority issue. While West Coast had no preference as to whether the Local 117 drivers were endtailed or dovetailed, it wanted the issue settled. Because the revised Letter of Understanding resolves the seniority issue it follows that West Coast wanted it in the contract. Therefore, contrary to the Appellants' argument, Local 313 members were not misled when they thought that West Coast wanted the revised Letter of Understanding in the contract.
 
 
 26
 Similarly, the Appellants' claim of unfair surprise and procedural irregularity does not withstand scrutiny. There is no evidence that Local 313 purposefully concealed the revised Letter of Understanding.[4] Instead, the Appellants were not told of the revised Letter of Understanding before the ratification hearing because this provision was only agreed upon and drafted shortly before the hearing was held.
 
 
 27
 Moreover, the district court found that the ratification hearing was not improper from a procedural standpoint. This finding is not clearly erroneous. The evidence establishes that the entire contract was presented to the Appellants and they had four hours to discuss it. Concerns about the revised Letter of Understanding were raised and debated. Indeed, the Appellants themselves refer to the testimony of a witness who stated that several people voiced concerns about the revised Letter of Understanding at the hearing. In addition, a vote was taken to wait 72 hours before deciding whether to ratify the contract. The membership rejected this option. Instead, they voted on the contract by secret ballot. Although the Appellants did not prevail, this was not due the procedures applied, but instead stemmed from the fact that Local 313 members unaffected by the seniority issue turned their backs on the Appellants in order to secure the contract.
 
 
 28
 Finally, the Appellants contend that they were denied their right to a "meaningful vote" under The Bill of Rights of the Labor and Management Reporting and Disclosure Act, 29 U.S.C.A. Sec. 411. Section 411 is purely an anti-discrimination provision. Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1473, 1474 n. 8 (9th Cir.1992). The Appellants do not allege a denial of rights accorded other members of Local 313 as required under Sec. 411, but instead allege a denial of rights to all of Local 313's members. As a result, their claim fails.
 
 3. The Joint Council Hearing
 
 29
 Local 313 states that the Appellants do not challenge the adequacy of Local 313's presentation before the Joint Council. However, the Appellants claim that "... Cserepes and Lueke impeded the testimony given to the Joint Council Panel such that a thorough search for the truth was impossible." The district court found otherwise, and its finding is supported by the evidence. Seven witnesses attended the joint council session on behalf of Local 313. Cserepes and Lueke presented an argument in favor of endtailing to Joint Council 28. According to one witness, Local 313 did the best job it could under the circumstances. Joint Council 28 simply found Local 117's argument more persuasive. This does not establish a breach of the duty of fair representation.
 
 
 30
 The Appellants also challenge the Joint Council's decision on the merits. The district court found that this is an independent claim and can not be used to prove that Local 313 breached its duty of fair representation. The district court was correct. If the Appellants want to challenge the validity of the Joint Council's decision they must bring an action against Joint Counsel 28 directly.
 
 B. Sanctions
 
 31
 The district court specifically found that the Appellants' action was not frivolous and that real issues and real facts were presented. It concluded that a reasonable argument could be made for the Appellants' position. As a result, it refused to impose Rule 11 sanctions. Local 313 challenges this decision.
 
 
 32
 Rule 11 mandates "the imposition of sanctions when a lawyer's position, after reasonable inquiry, will not support a reasonable belief that there is a sound basis in law or in fact for the position taken." Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986). In the instant case, there was a sound basis in law and in fact for the Appellants' position. The Appellants made it clear that they wanted the Local 117 drivers endtailed. However, after negotiations, a ratification session, and a hearing before Joint Council 28, that were all arguably inadequate, the Local 117 drivers were allowed to dovetail. As the district court recognized, this result significantly disadvantaged the Appellants. While the Appellants are unable to establish that Local 313 breached its duty of fair representation, their action is not frivolous. As a result, the district court did not abuse its discretion in refusing to impose Rule 11 sanctions.
 
 
 33
 Local 313 has also asked this court to impose sanctions pursuant to Fed.R.App.Pro. 38. It does not, however, indicate why Rule 38 sanctions are warranted in this case. We refuse to say that the appeal was wholly frivolous and we deny Local 313's request.
 
 CONCLUSION
 
 34
 The district court did not err in finding that Local 313 did not breach its duty of fair representation.[5] It also did not err in refusing to impose Rule 11 sanctions against the Appellants. Finally, Local 313's request for Rule 38 sanctions is denied. The judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 West Coast and Joint Council 28 were subsequently dropped from the suit
 
 
 [2]
 In Peters, the court questioned the value of strict adherence to the two-step analysis discussed above. While acknowledging that the test provides useful guideposts, the court stated that "... the labels 'ministerial act' and 'act of judgment' represent not absolute categories without relation to one another but opposing points on a continuum that broadly attempts to separate discretionary decision making from inexplicable conduct." Peters, 931 F.2d at 539
 
 
 [3]
 The court in Ackley assumed without deciding that the same standard applied in cases involving the nondisclosure of material information. Moreover, the Appellants do not discuss Ackley, let alone attempt to distinguish it
 
 
 [4]
 The suggestion that there was a "secret agreement" between Cserepes and Lueke and Arnie Weinmeister, the leader of Local 117, is meritless. Cserepes' plea that the members of Local 313 refrain from voting on the seniority issue at the May 5, 1990, meeting is not proof of a secret agreement, but instead indicates that Cserepes' was aware that his freedom to negotiate would be limited if the membership voted on the issue
 
 
 [5]
 Because we hold that the district court did not err in finding that Local 313 did not breach its duty of fair representation, we do not reach the issues of whether the district court erred in denying Local 313's motion for summary judgment or whether it erred in finding that the Appellants were not barred by a failure to exhaust internal union remedies